# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| AOB PRODUCTS COMPANY,       ) | |
|           ) | |
|       Plaintiff,      ) | |
|           ) | |
| vs.           ) | Case No: |
|           ) | **JURY TRIAL DEMANDED** |
| VISTA OUTDOOR INC. and VISTA     ) | |
| OUTDOOR OPERATIONS LLC ,    ) | |
| **Serve:  C T Corporation System**   ) | |
|        **120 South Central Avenue**   ) | |
|        **Clayton, MO 63105**       ) | |
|           ) | |
|       Defendants.    ) | |

## COMPLAINT

Plaintiff AOB Products Company ("AOB" or "Plaintiff") makes this Complaint against Defendants Vista Outdoor Inc. and Vista Outdoor Operations LLC (collectively "Defendants"), demands a jury trial, and alleges as follows:

## INTRODUCTION

1.      AOB, and its predecessors-in-interest, have offered exceptional high quality goods for outdoor and hunting enthusiasts for decades. AOB is a wholly owned subsidiary of American Outdoor Brands, Inc., a pre-eminent provider of outdoor sports, recreation and firearm-related products and accessories in the United States and throughout the world.  American Outdoor Brands, Inc., through its predecessors-in-interest (including its most recent predecessor Smith & Wesson Inc.), has been well known in the field of hunting and shooting sports for decades.

2.      AOB produces innovative, top quality products under its brands BOG®; BUBBA®; Caldwell®; Crimson Trace®; Frankford Arsenal®; Grilla Grills®; Hooyman®; Imperial®; Intellidropper®; LaserLyte®; Lockdown®; MEAT!; Old Timer®; Schrade®; Tipton®; Uncle Henry®; ust®; and Wheeler®.

3.     AOB's status as the market leader is due not only to the superior quality of its products and longevity of excellence but also because of its significant commitment to innovation.

4.     AOB conceives, designs, produces, sources, and sells products and accessories, including shooting supplies, rests, vaults, and other related accessories; reloading, gunsmithing, and firearm cleaning supplies; lifestyle products such as premium sportsman knives and tools for fishing and hunting; land management tools for hunting preparedness; harvesting products for post-hunt or post-fishing activities; electro-optical devices, including hunting optics, firearm aiming devices, flashlights, and laser grips; and survival, camping, and emergency preparedness products.

5.     AOB understands and values intellectual property rights and owns in excess of 300 patents and pending patent applications.

6.     AOB has 34 employees dedicated to research and development activities.

7.     In fiscal year 2019, 2020, and 2021 AOB's gross spending on research and development activities relating to the development of new products was $4.9 million, $5.0 million and $5.4 million.

8.     One example of AOB's longstanding efforts to introduce new and inventive products for hunting and outdoor enthusiasts is the Frankford Arsenal® Intellidropper® electronic powder measure.

9.     In or about 2018, Tim Kinney and his co-inventors invented the Intellidropper® electronic powder measure. The Intellidropper® electronic powder measure is an innovative firearm ammunition powder dispenser that includes, among other features, a hopper for holding a supply of ammunition powder, a scale for measuring ammunition powder dispensed from the hopper, and a controller that optimizes powder dispensing to be fast and highly accurate based on the particular powder in the hopper.

2

10.    On August 21, 2018, Battenfeld Technologies, AOB's predecessor-in-interest, filed a non-provisional U.S. patent application directed to innovative technology incorporated in the Intellidropper® electronic powder measure.

11.    The first patent was granted and issued on September 14, 2021 as U.S. Patent Number 11,118,884 (the "'884 Patent"). The '884 Patent is also referred to as one of the "Asserted Patents."

12.    Another patent stemming from the same application as the '884 Patent was granted and issued on October 18, 2022 as U.S. Patent Number 11,473,890 (the "'890 Patent"). The '890 Patent is also referred to as one of the "Asserted Patents."

13.    Another patent stemming from the same application as the '884 Patent was granted and issued on November 1, 2022 as U.S. Patent Number 11,486,684 (the "'684 Patent"). The '684 Patent is also referred to as one of the "Asserted Patents."

14.    Another patent stemming from the same application as the '884 Patent was granted and issued on November 1, 2022 as U.S. Patent Number 11,486,685 (the "'685 Patent"). The '685 Patent is also referred to as one of the "Asserted Patents."

15.    Yet another patent stemming from the same application as the '884 Patent was granted and issued on November 22, 2022 as U.S. Patent Number 11,506,472 (the "'472 Patent"). The '472 Patent is also referred to as one of the "Asserted Patents."

16.    A true and correct image of the Intellidropper® electronic powder measure, which is an embodiment covered by the Asserted Patents, appears below:

CORE/3510895.0750/177656375.3



17.     The improvements and innovations embodied in the Asserted Patents are highly valuable and, until unlawfully copied by Defendants, served as key differentiating features to other products on the market.

18.     AOB is the current owner of the Asserted Patents and all associated rights of exclusivity. The exclusive position and innovation encompassed by the Asserted Patents continue to be an important asset for AOB.

19.     AOB's position is now threatened by Defendants' introduction of their infringing copycat products into the market.

20.     Defendants are now infringing the Asserted Patents with their "Accused Products" described below. The Accused Products include at least the "ChargeMaster Supreme Electronic

CORE/3510895.0750/177656375.3

Powder Dispenser." A true and correct image of the ChargeMaster Supreme Electronic Powder Dispenser appears below:



21.     Without the permission or authorization of AOB, Defendants have copied AOB's patented Intellidropper® electronic powder measure technology, and have begun to manufacture, distribute, and sell their infringing Accused Products.

22.     Upon information and belief, AOB has lost and is losing customers and has experienced incalculable erosion to its goodwill and reputation. If Defendants are allowed to continue marketing and promoting their Accused Products, then AOB will continue to suffer irreparable harm, including loss of sales, market share, profit and goodwill. In short, AOB's innovative Intellidropper® electronic powder measure product line, market success, and accompanying patent rights are deeply threatened.

23.     To eliminate further infringement, AOB brings this action for patent infringement.

CORE/3510895.0750/177656375.3

## NATURE OF THE ACTION

24.     This action seeks damages and permanent injunctive relief for Defendants' acts of making, using, selling, offering for sale and/or importing its Accused Products that infringe the Asserted Patents.

## THE PARTIES

25.     AOB is a Missouri corporation with its principal place of business at 1800 N. Route Z, Suite A, Columbia, MO 65202.

26.     Upon information and belief, Vista Outdoor Inc. is a Delaware corporation with its principal place of business at 1 Vista Way, Anoka, MN 55303.

27.     Upon information and belief, Vista Outdoor Operations LLC, a wholly-owned subsidiary of Vista Outdoor Inc., is a Delaware limited liability company with its principal place of business at 1 Vista Way, Anoka, MN 55303.

## JURISDICTION AND VENUE

28.     This action arises under the United States patent laws, 35 U.S.C. § 101 *et seq.*, including 35 U.S.C. § 271, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(a).

29.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are registered to do business with the Missouri Secretary of State, regularly conduct business in this State and have committed infringing acts in this District, including without limitation, maintaining an interactive website that purposefully provides offers to sell the infringing Accused Products directly to consumers in this District and selling Accused Products to at least one major retailer in the District, Midway U.S.A., Inc..

30.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because, upon information and belief, during the relevant time period, Defendants have maintained regular and

CORE/3510895.0750/177656375.3

established places of business in this district including in Jefferson City, Missouri and Seymour, Missouri, have carried on substantial and continuous business activities in this State, and have committed infringing acts in this District, including without limitation, maintaining an interactive website that purposefully provides offers to sell the Accused Products directly to consumers in this District and selling the infringing Accused Products to at least one major retailer in the District, Midway U.S.A., Inc..

## THE '884 PATENT

31.     U.S. Patent Number 11,118,884 (the "'884 Patent") is entitled "Dispenser for Firearm Ammunition Powder." The '884 Patent was duly and legally issued on September 14, 2021 by the United States Patent and Trademark Office.

32.     A true and correct copy of the '884 Patent is attached to this Complaint as Exhibit A.

33.     AOB is the owner and assignee of the '884 Patent and possesses all rights of recovery under the '884 Patent.

34.     The '884 Patent has not expired and is in full force and effect.

35.     The '884 Patent claims are valid and enforceable.

36.     The Abstract of the '884 Patent states in part: "[a] dispenser for dispensing powder for firearm ammunition and associated methods. The dispenser can include a hopper, a conveyor, a scale, a dispenser controller, and a tangible storage medium storing instructions executable by the dispenser controller. The dispenser controller can execute a powder calibration sequence and/or a dispensing sequence. In the powder calibration sequence and/or the dispensing sequence, the dispenser controller desirably learns the dispense rate of the powder and uses the dispense rate to optimize dispensing of the powder and increase precision in dispensing a target mass of powder."

## THE '890 PATENT

37.     U.S. Patent Number 11,473,890 (the "'890 Patent") is entitled "Dispenser for Firearm Ammunition Powder." The '890 Patent was duly and legally issued on October 18, 2022 by the United States Patent and Trademark Office.

38.     A true and correct copy of the '890 Patent is attached to this Complaint as <u>Exhibit B</u>.

39.     AOB is the owner and assignee of the '890 Patent and possesses all rights of recovery under the '890 Patent.

40.     The '890 Patent has not expired and is in full force and effect.

41.     The '890 Patent claims are valid and enforceable.

42.     The Abstract of the '890 Patent states in part: "[a] dispenser for dispensing powder for firearm ammunition and associated methods. The dispenser can include a hopper, a conveyor, a scale, a dispenser controller, and a tangible storage medium storing instructions executable by the dispenser controller. The dispenser controller can execute a powder calibration sequence and/or a dispensing sequence. In the powder calibration sequence and/or the dispensing sequence, the dispenser controller desirably learns the dispense rate of the powder and uses the dispense rate to optimize dispensing of the powder and increase precision in dispensing a target mass of powder."

<u>**THE '684 PATENT**</u>

43.     U.S. Patent Number 11,486,684 (the "'684 Patent") is entitled "Dispenser for Firearm Ammunition Powder." The '684 Patent was duly and legally issued on November 1, 2022 by the United States Patent and Trademark Office.

44.     A true and correct copy of the '684 Patent is attached to this Complaint as <u>Exhibit C</u>.

45.     AOB is the owner and assignee of the '684 Patent and possesses all rights of recovery under the '684 Patent.

46.     The '684 Patent has not expired and is in full force and effect.

CORE/3510895.0750/177656375.3

47.     The '684 Patent claims are valid and enforceable.

48.     The Abstract of the '684 Patent states in part: "[a] dispenser for dispensing powder for firearm ammunition and associated methods. The dispenser can include a hopper, a conveyor, a scale, a dispenser controller, and a tangible storage medium storing instructions executable by the dispenser controller. The dispenser controller can execute a powder calibration sequence and/or a dispensing sequence. In the powder calibration sequence and/or the dispensing sequence, the dispenser controller desirably learns the dispense rate of the powder and uses the dispense rate to optimize dispensing of the powder and increase precision in dispensing a target mass of powder."

## THE '685 PATENT

49.     U.S. Patent Number 11,486,685 (the "'685 Patent") is entitled "Dispenser for Firearm Ammunition Powder." The '685 Patent was duly and legally issued on November 1, 2022 by the United States Patent and Trademark Office.

50.     A true and correct copy of the '685 Patent is attached to this Complaint as Exhibit D.

51.     AOB is the owner and assignee of the '685 Patent and possesses all rights of recovery under the '685 Patent.

52.     The '685 Patent has not expired and is in full force and effect.

53.     The '685 Patent claims are valid and enforceable.

54.     The Abstract of the '685 Patent states in part: "[a] dispenser for dispensing powder for firearm ammunition and associated methods. The dispenser can include a hopper, a conveyor, a scale, a dispenser controller, and a tangible storage medium storing instructions executable by the dispenser controller. The dispenser controller can execute a powder calibration sequence and/or a dispensing sequence. In the powder calibration sequence and/or the dispensing sequence, the

CORE/3510895.0750/177656375.3

dispenser controller desirably learns the dispense rate of the powder and uses the dispense rate to optimize dispensing of the powder and increase precision in dispensing a target mass of powder."

## THE '472 PATENT

55.     U.S. Patent Number 11,506,472 (the "'472 Patent") is entitled "Dispenser for Firearm Ammunition Powder."  The '472 Patent was duly and legally issued on November 22, 2022 by the United States Patent and Trademark Office.

56.     A true and correct copy of the '472 Patent is attached to this Complaint as <u>Exhibit E</u>.

57.     AOB is the owner and assignee of the '472 Patent and possesses all rights of recovery under the '472 Patent.

58.     The '472 Patent has not expired and is in full force and effect.

59.     The '472 Patent claims are valid and enforceable.

60.     The Abstract of the '472 Patent states in part: "[a] dispenser for dispensing powder for firearm ammunition and associated methods. The dispenser can include a hopper, a conveyor, a scale, a dispenser controller, and a tangible storage medium storing instructions executable by the dispenser controller. The dispenser controller can execute a powder calibration sequence and/or a dispensing sequence. In the powder calibration sequence and/or the dispensing sequence, the dispenser controller desirably learns the dispense rate of the powder and uses the dispense rate to optimize dispensing of the powder and increase precision in dispensing a target mass of powder."

## DEFENDANT'S KNOWLEDGE OF AOB'S PATENT RIGHTS

61.     AOB complies with the marking requirements of 35 U.S.C. § 287 related to its products under the Asserted Patents including by way of its virtual patent marking website at https://www.aob.com/patents/.

CORE/3510895.0750/177656375.3

62.     AOB is a well-known competitive manufacturer of branded outdoor products and equipment.

63.     Defendants are well aware of AOB's patent rights in the Intellidropper® electronic powder measure.

64.     In August 2021, AOB informed Defendants by letter that the Accused Products infringed allowed claims of AOB's pending patent application that soon thereafter issued as the '884 Patent. The patent examiner had issued a Notice of Allowance, allowing claims 1-19 and 21-23 (ultimately issuing as claims 1-22 of the '884 Patent). The letter demanded that Defendants cease and desist from any further manufacture, use, import, sale, or offer for sale of the Accused Products infringing AOB's patent rights.

65.     On September 14, 2021, in a conference call, AOB informed Daniel Kelly, in-house counsel for Vista, that the '884 Patent had issued. AOB reiterated that the Accused Products were infringing the '884 patent and demanded Defendants stop the infringing conduct. AOB informed Mr. Kelly that AOB was pursuing additional protection for features of the Intellidropper® electronic powder measure in continuing patent applications.

66.     On September 14, 2022, AOB informed Vista, by a conference call with Daniel Kelly, that additional AOB patents were to issue soon, and AOB reiterated its demand that Vista stop selling the Accused Products.

67.     On October 28, 2022, AOB provided Defendants a claim chart demonstrating infringement of AOB's '884 Patent by the Accused Products and also provided Defendants notice by email that the '890 Patent had issued, and that the Accused Products infringed the '890 Patent.

68.     On November 1, 2022, AOB provided Defendants notice by email that the '684 and '685 Patents had issued, and that the Accused Products infringed the '684 and '685 Patents.

CORE/3510895.0750/177656375.3

69. On January 27, 2023, AOB provided Defendants notice by email that the '472 Patent had issued, and that the Accused Products infringed the '472 Patent.

70. Upon information and belief, at least as early as 2021, Defendants were advertising one or more of the Accused Products for sale.

71. Despite receiving ample, repeated notice of all of AOB's Asserted Patents and detailed information and analysis demonstrating that Defendants' Accused Products infringe the Asserted Patents, Defendants to this date continue to sell the Accused Products, including without limitation, on their own website.

## DEFENDANTS' ACCUSED PRODUCTS

72. Defendants' Accused Products are shown and described above.

73. Upon information and belief, Defendants' Accused Products were designed to compete in the market with AOB's Intellidropper® electronic powder measure.

74. Upon information and belief, Defendants' efforts are directly targeted to take market share from AOB. Defendants are promoting their Accused Products to the same retailers, distributers, and consumers served by AOB, including marketing the Accused Products at multiple industry trade shows attended by AOB. Defendants' Accused Products are aimed at displacing AOB's Intellidropper® electronic powder measure in the market in light of the few market participants and niche nature of the market. Any sale by Defendants of the Accused Products likely displaces a sale of AOB's patented product.

## COUNT 1
## INFRINGEMENT OF U.S. PATENT NO. 11,118,884

75. AOB incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

CORE/3510895.0750/177656375.3

76.     Defendants, without license or authorization to do so, have infringed one or more claims of the '884 Patent, and continue to infringe, literally or under the doctrine of equivalents, one or more claims the '884 Patent by making, using, selling, offering for sale, and/or importing the Accused Products within the United States, in violation of 35 U.S.C. § 271(a).

77.     Defendants' Accused Products infringe the '884 Patent.  For example, Defendants' Accused Products infringe at least claims 6 and 18 of the '884 Patent.

78.     Defendants without license or authorization to do so, have also indirectly infringed the '884 Patent.  Defendants have actively induced infringement of one or more claims of the '884 Patent, and continue to actively induce infringement of one or more claims the '884 Patent, by inducing third parties (e.g., customers or end users) to make and use the Accused Products within the United States, in violation of 35 U.S.C. § 271(b).

79.     The Accused Products assembled and used by third parties infringe the '884 Patent.  For example, the Accused Products assembled and used by third parties infringes at least claims 6 and 18 of the '884 Patent.

80.     Defendants have induced and are continuing to induce third parties to infringe the '884 Patent, including by selling components of the Accused Products to third parties and facilitating, training, supporting, teaching, directing, or instructing the third parties to assemble and use the Accused Products knowing that such assembly and use of the Accused Products infringes at least claims 6 and 18 of the '884 Patent. Defendants sell components of the Accused Products together with instruction materials instructing third parties to assemble and use the Accused Products in a way that infringes the '884 Patent.

81.     Defendants have induced and are inducing the third parties to directly infringe the '884 Patent by assembling the Accused Products with specific intent to cause the third parties to

CORE/3510895.0750/177656375.3

assemble and use the Accused Products in a manner that infringes at least claims 6 and 18 of the '884 Patent.

82.     Upon information and belief, Defendants possessed specific intent to induce direct infringement of at least claims 6 and 18 of the '884 Patent by its customers and/or end users that assemble and use the Accused Products.

83.     Such steps by Defendants include, among other things, advising, supporting, and directing customers and end users to assemble and use the Accused Products in an infringing manner, and/or distributing and providing instructions, terms of use, training, or advertising, that guide others to assemble and use the Accused Products in an infringing manner.

84.     Defendants were objectively aware of, and had knowledge of, the '884 Patent at least as early as August 20, 2021, when AOB sent a copy of the Notice of Allowance of claims 1-19 and 21-23 (which ultimately issued as claims 1-22 of the '884 Patent) to Defendants along with a letter notifying Defendants the Accused Products were infringing.

85.     Defendants have also contributed to the infringement of the '884 Patent under 35 U.S.C. § 271(c) by importing, offering to sell, selling, and/or inducing the assembly and use of the Accused Products within the United States knowing that the components of the Accused Products were especially made or adapted for assembly and use in a manner that infringes at least claims 6 and 18 of the '884 Patent.

86.     The components of the Accused Products sold by Defendants are material to the claimed electronic powder measure and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

87.     Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 by making using, importing, offering to sell, and/or selling their Accused Products and

teaching, instructing, training, guiding, and directing its customers and end users on the assembly and use of the Accused Products. In committing these acts of infringement, Defendants acted despite having knowledge of the '884 Patent and knowledge that their actions constituted infringement of at least one valid and enforceable claim of the '884 Patent.

88.     Defendants acted with knowledge of the '884 Patent and despite an objectively high likelihood that their actions constituted infringement of at least one valid and enforceable claim of the '884 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '884 Patent.

89.     Defendants' infringement of the '884 Patent has been knowing and willful.

90.     Defendants' infringement and behavior was egregious in light of the notice AOB provided to Defendants.

91.     As a direct and proximate result of Defendants' acts of infringement, AOB has suffered and continues to suffer damages and irreparable harm.

92.     AOB has no adequate remedy at law for Defendants' acts of infringement and unless Defendants' acts of infringement are enjoined, AOB will continue to be damaged and irreparably harmed.

## COUNT 2
## INFRINGEMENT OF U.S. PATENT NO. 11,473,890

93.     AOB incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

94.     Defendants, without license or authorization to do so, have infringed one or more claims of the '890 Patent, and continue to infringe, literally or under the doctrine of equivalents, one or more claims the '890 Patent by making, using, selling, offering for sale, and/or importing the Accused Products within the United States, in violation of 35 U.S.C. § 271(a).

CORE/3510895.0750/177656375.3

95.     Defendants' Accused Products infringe the '890 Patent.  For example, Defendants' Accused Products infringe at least claims 1, 11, and 20 of the '890 Patent.

96.     Defendants without license or authorization to do so, have also indirectly infringed the '890 Patent.  Defendants have actively induced infringement of one or more claims of the '890 Patent, and continue to actively induce infringement of one or more claims the '890 Patent, by inducing third parties (e.g., customers or end users) to make and use the Accused Products within the United States, in violation of 35 U.S.C. § 271(b).

97.     The Accused Products assembled and used by third parties infringe the '890 Patent.  For example, the Accused Products assembled and used by third parties infringes at least claims 1, 11, and 20 of the '890 Patent.

98.     Defendants have induced and are continuing to induce third parties to infringe the '890 Patent, including by selling components of the Accused Products to third parties and facilitating, training, supporting, teaching, directing, or instructing the third parties to assemble and use the Accused Products knowing that such assembly and use of the Accused Products infringes at least claims 1, 11, and 20 of the '890 Patent. Defendants sell components of the Accused Products together with instruction materials instructing third parties to assemble and use the Accused Products in a way that infringes the '890 Patent.

99.     Defendants have induced and are inducing the third parties to directly infringe the '890 Patent by assembling the Accused Products with specific intent to cause the third parties to assemble and use the Accused Products in a manner that infringes at least claims 1, 11, and 20 of the '890 Patent.

CORE/3510895.0750/177656375.3

100. Upon information and belief, Defendants possessed specific intent to induce direct infringement of at least claims 1, 11, and 20 of the '890 Patent by its customers and/or end users that assemble and use the Accused Products.

101. Such steps by Defendants include, among other things, advising, supporting, and directing customers and end users to assemble and use the Accused Products in an infringing manner, and/or distributing and providing instructions, terms of use, training, or advertising, that guide others to assemble and use the Accused Products in an infringing manner.

102. Defendants were objectively aware of, and had knowledge of, the '890 Patent at least as early as October 28, 2022, when AOB sent notice by email that the '890 Patent had issued along with a letter notifying Defendants the Accused Products were infringing.

103. Defendants have also contributed to the infringement of the '890 Patent under 35 U.S.C. § 271(c) by importing, offering to sell, selling, and/or inducing the assembly and use of the Accused Products within the United States knowing that the components of the Accused Products were especially made or adapted for assembly and use in a manner that infringes at least claims 1, 11, and 20 of the '890 Patent.

104. The components of the Accused Products sold by Defendants are material to the claimed electronic powder measure and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

105. Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 by making using, importing, offering to sell, and/or selling their Accused Products and teaching, instructing, training, guiding, and directing its customers and end users on the assembly and use of the Accused Products. In committing these acts of infringement, Defendants acted

17

despite having knowledge of the '890 Patent and knowledge that their actions constituted infringement of at least one valid and enforceable claim of the '890 Patent.

106.    Defendants acted with knowledge of the '890 Patent and despite an objectively high likelihood that their actions constituted infringement of at least one valid and enforceable claim of the '890 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '890 Patent.

107.    Defendants' infringement of the '890 Patent has been knowing and willful.

108.    Defendants' infringement and behavior was egregious in light of the notice AOB provided to Defendants.

109.    As a direct and proximate result of Defendants' acts of infringement, AOB has suffered and continues to suffer damages and irreparable harm.

110.    AOB has no adequate remedy at law for Defendants' acts of infringement and unless Defendants' acts of infringement are enjoined, AOB will continue to be damaged and irreparably harmed.

## COUNT 3
## INFRINGEMENT OF U.S. PATENT NO. 11,486,684

111.    AOB incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

112.    Defendants, without license or authorization to do so, have infringed one or more claims of the '684 Patent, and continue to infringe, literally or under the doctrine of equivalents, one or more claims the '684 Patent by making, using, selling, offering for sale, and/or importing the Accused Products within the United States, in violation of 35 U.S.C. § 271(a).

113.    Defendants' Accused Products infringe the '684 Patent. For example, Defendants' Accused Products infringe at least claim 1 of the '684 Patent.

114. Defendants without license or authorization to do so, have also indirectly infringed the '684 Patent. Defendants have actively induced infringement of one or more claims of the '684 Patent, and continue to actively induce infringement of one or more claims the '684 Patent, by inducing third parties (e.g., customers or end users) to make and use the Accused Products within the United States, in violation of 35 U.S.C. § 271(b).

115. The Accused Products assembled and used by third parties infringe the '684 Patent. For example, the Accused Products assembled and used by third parties infringes at least claim 1 of the '684 Patent.

116. Defendants have induced and are continuing to induce third parties to infringe the '684 Patent, including by selling components of the Accused Products to third parties and facilitating, training, supporting, teaching, directing, or instructing the third parties to assemble and use the Accused Products knowing that such assembly and use of the Accused Products infringes at least claim 1 of the '684 Patent. Defendants sell components of the Accused Products together with instruction materials instructing third parties to assemble and use the Accused Products in a way that infringes the '684 Patent.

117. Defendants have induced and are inducing the third parties to directly infringe the '684 Patent by assembling the Accused Products with specific intent to cause the third parties to assemble and use the Accused Products in a manner that infringes at least claim 1 of the '684 Patent.

118. Upon information and belief, Defendants possessed specific intent to induce direct infringement of at least claim 1 of the '684 Patent by its customers and/or end users that assemble and use the Accused Products.

CORE/3510895.0750/177656375.3

119.   Such steps by Defendants include, among other things, advising, supporting, and directing customers and end users to assemble and use the Accused Products in an infringing manner, and/or distributing and providing instructions, terms of use, training, or advertising, that guide others to assemble and use the Accused Products in an infringing manner.

120.   Defendants were objectively aware of, and had knowledge of, the '684 Patent at least as early as November 1, 2022, when AOB sent a notice by email that the '684 Patent had issued along with a letter notifying Defendants the Accused Products were infringing.

121.   Defendants have also contributed to the infringement of the '684 Patent under 35 U.S.C. § 271(c) by importing, offering to sell, selling, and/or inducing the assembly and use of the Accused Products within the United States knowing that the components of the Accused Products were especially made or adapted for assembly and use in a manner that infringes at least claim 1 of the '684 Patent.

122.   The components of the Accused Products sold by Defendants are material to the claimed electronic powder measure and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

123.   Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 by making using, importing, offering to sell, and/or selling their Accused Products and teaching, instructing, training, guiding, and directing its customers and end users on the assembly and use of the Accused Products.  In committing these acts of infringement, Defendants acted despite having knowledge of the '684 Patent and knowledge that their actions constituted infringement of at least one valid and enforceable claim of the '684 Patent.

124.   Defendants acted with knowledge of the '684 Patent and despite an objectively high likelihood that their actions constituted infringement of at least one valid and enforceable claim of

CORE/3510895.0750/177656375.3

the '684 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '684 Patent.

125.    Defendants' infringement of the '684 Patent has been knowing and willful.

126.    Defendants' infringement and behavior was egregious in light of the notice AOB provided to Defendants.

127.    As a direct and proximate result of Defendants' acts of infringement, AOB has suffered and continues to suffer damages and irreparable harm.

128.    AOB has no adequate remedy at law for Defendants' acts of infringement and unless Defendants' acts of infringement are enjoined, AOB will continue to be damaged and irreparably harmed.

### COUNT 4
### INFRINGEMENT OF U.S. PATENT NO. 11,486,685

129.    AOB incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

130.    Defendants, without license or authorization to do so, have infringed one or more claims of the '685 Patent, and continue to infringe, literally or under the doctrine of equivalents, one or more claims the '685 Patent by making, using, selling, offering for sale, and/or importing the Accused Products within the United States, in violation of 35 U.S.C. § 271(a).

131.    Defendants' Accused Products infringe the '685 Patent.  For example, Defendants' Accused Products infringe at least claim 1 of the '685 Patent.

132.    Defendants without license or authorization to do so, have also indirectly infringed the '685 Patent.  Defendants have actively induced infringement of one or more claims of the '685 Patent, and continue to actively induce infringement of one or more claims the '685 Patent, by inducing

CORE/3510895.0750/177656375.3

third parties (e.g., customers or end users) to make and use the Accused Products within the United States, in violation of 35 U.S.C. § 271(b).

133. The Accused Products assembled and used by third parties infringe the '685 Patent. For example, the Accused Products assembled and used by third parties infringes at least claim 1 of the '685 Patent.

134. Defendants have induced and are continuing to induce third parties to infringe the '685 Patent, including by selling components of the Accused Products to third parties and facilitating, training, supporting, teaching, directing, or instructing the third parties to assemble and use the Accused Products knowing that such assembly and use of the Accused Products infringes at least claim 1 of the '685 Patent. Defendants sell components of the Accused Products together with instruction materials instructing third parties to assemble and use the Accused Products in a way that infringes the '685 Patent.

135. Defendants have induced and are inducing the third parties to directly infringe the '685 Patent by assembling the Accused Products with specific intent to cause the third parties to assemble and use the Accused Products in a manner that infringes at least claim 1 of the '685 Patent.

136. Upon information and belief, Defendants possessed specific intent to induce direct infringement of at least claim 1 of the '685 Patent by its customers and/or end users that assemble and use the Accused Products.

137. Such steps by Defendants include, among other things, advising, supporting, and directing customers and end users to assemble and use the Accused Products in an infringing manner, and/or distributing and providing instructions, terms of use, training, or advertising, that guide others to assemble and use the Accused Products in an infringing manner.

CORE/3510895.0750/177656375.3

138.   Defendants were objectively aware of, and had knowledge of, the '685 Patent at least as early as November 1, 2022, when AOB sent a notice by email that the '685 Patent had issued along with a letter notifying Defendants the Accused Products were infringing.

139.   Defendants have also contributed to the infringement of the '685 Patent under 35 U.S.C. § 271(c) by importing, offering to sell, selling, and/or inducing the assembly and use of the Accused Products within the United States knowing that the components of the Accused Products were especially made or adapted for assembly and use in a manner that infringes at least claim 1 of the '685 Patent.

140.   The components of the Accused Products sold by Defendants are material to the claimed electronic powder measure and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

141.   Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 by making using, importing, offering to sell, and/or selling their Accused Products and teaching, instructing, training, guiding, and directing its customers and end users on the assembly and use of the Accused Products.  In committing these acts of infringement, Defendants acted despite having knowledge of the '685 Patent and knowledge that their actions constituted infringement of at least one valid and enforceable claim of the '685 Patent.

142.   Defendants acted with knowledge of the '685 Patent and despite an objectively high likelihood that their actions constituted infringement of at least one valid and enforceable claim of the '685 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '685 Patent.

143.   Defendants' infringement of the '685 Patent has been knowing and willful.

CORE/3510895.0750/177656375.3

144.     Defendants' infringement and behavior was egregious in light of the notice AOB provided to Defendants.

145.     As a direct and proximate result of Defendants' acts of infringement, AOB has suffered and continues to suffer damages and irreparable harm.

146.     AOB has no adequate remedy at law for Defendants' acts of infringement and unless Defendants' acts of infringement are enjoined, AOB will continue to be damaged and irreparably harmed.

## COUNT 5
## INFRINGEMENT OF U.S. PATENT NO. 11,506,472

147.     AOB incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

148.     Defendants, without license or authorization to do so, have infringed one or more claims of the '472 Patent, and continue to infringe, literally or under the doctrine of equivalents, one or more claims the '472 Patent by making, using, selling, offering for sale, and/or importing the Accused Products within the United States, in violation of 35 U.S.C. § 271(a).

149.     Defendants' Accused Products infringe the '472 Patent.  For example, Defendants' Accused Products infringe at least claims 1, 11, 12, 13, 14, and 37 of the '472 Patent.

150.     Defendants without license or authorization to do so, have also indirectly infringed the '472 Patent.  Defendants have actively induced infringement of one or more claims of the '472 Patent, and continue to actively induce infringement of one or more claims the '472 Patent, by inducing third parties (e.g., customers or end users) to make and use the Accused Products within the United States, in violation of 35 U.S.C. § 271(b).

CORE/3510895.0750/177656375.3

151.   The Accused Products assembled and used by third parties infringe the '472 Patent.  For example, the Accused Products assembled and used by third parties infringes at least claims 1, 11, 12, 13, 14, and 37 of the '472 Patent.

152.   Defendants have induced and are continuing to induce third parties to infringe the '472 Patent, including by selling components of the Accused Products to third parties and facilitating, training, supporting, teaching, directing, or instructing the third parties to assemble and use the Accused Products knowing that such assembly and use of the Accused Products infringes at least claims 1, 11, 12, 13, 14, and 37 of the '472 Patent. Defendants sell components of the Accused Products together with instruction materials instructing third parties to assemble and use the Accused Products in a way that infringes the '472 Patent.

153.   Defendants have induced and are inducing the third parties to directly infringe the '472 Patent by assembling the Accused Products with specific intent to cause the third parties to assemble and use the Accused Products in a manner that infringes at least claims 1, 11, 12, 13, 14, and 37 of the '472 Patent.

154.   Upon information and belief, Defendants possessed specific intent to induce direct infringement of at least claims 1, 11, 12, 13, 14, and 37 of the '472 Patent by its customers and/or end users that assemble and use the Accused Products.

155.   Such steps by Defendants include, among other things, advising, supporting, and directing customers and end users to assemble and use the Accused Products in an infringing manner, and/or distributing and providing instructions, terms of use, training, or advertising, that guide others to assemble and use the Accused Products in an infringing manner.

CORE/3510895.0750/177656375.3

156.    Defendants were objectively aware of, and had knowledge of, the '472 Patent at least as early as January 27, 2023, when AOB sent a notice by email that the '472 Patent had issued along with a letter notifying Defendants the Accused Products were infringing.

157.    Defendants have also contributed to the infringement of the '472 Patent under 35 U.S.C. § 271(c) by importing, offering to sell, selling, and/or inducing the assembly and use of the Accused Products within the United States knowing that the components of the Accused Products were especially made or adapted for assembly and use in a manner that infringes at least claims 1, 11, 12, 13, 14, and 37 of the '472 Patent.

158.    The components of the Accused Products sold by Defendants are material to the claimed electronic powder measure and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

159.    Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 by making using, importing, offering to sell, and/or selling their Accused Products and teaching, instructing, training, guiding, and directing its customers and end users on the assembly and use of the Accused Products.  In committing these acts of infringement, Defendants acted despite having knowledge of the '472 Patent and knowledge that their actions constituted infringement of at least one valid and enforceable claim of the '472 Patent.

160.    Defendants acted with knowledge of the '472 Patent and despite an objectively high likelihood that their actions constituted infringement of at least one valid and enforceable claim of the '472 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '472 Patent.

161.    Defendants' infringement of the '472 Patent has been knowing and willful.

162. Defendants' infringement and behavior was egregious in light of the notice AOB provided to Defendants.

163. As a direct and proximate result of Defendants' acts of infringement, AOB has suffered and continues to suffer damages and irreparable harm.

164. AOB has no adequate remedy at law for Defendants' acts of infringement and unless Defendants' acts of infringement are enjoined, AOB will continue to be damaged and irreparably harmed.

## JURY DEMAND

165. AOB hereby requests a trial by jury on all issues properly heard by a jury pursuant to the Seventh Amendment of the United States Constitution.

## PRAYER FOR RELIEF

166. AOB respectfully requests that the Court find in its favor and against the Defendant, and that the Court grant AOB the following relief:

A. A judgment in favor of AOB that Defendants infringed and are infringing one or more claims of the Asserted Patents;

B. A permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing, inducing the infringement of, or contributing to the infringement of the Asserted Patents, or such other equitable relief the Court determines is warranted;

C. An award to AOB of damages adequate to compensate AOB for the Defendants' acts of infringement together with pre-judgment and post-judgment interest pursuant to 35 U.S.C. § 284;

D. Trebling the damage award under 35 U.S.C. § 284;

27

E.     Finding this to be an exceptional case under 35 U.S.C. § 285 and awarding Plaintiff

its reasonable attorneys' fees and expenses in this action; and

F.     Any further relief that the Court deems just and proper.


Date: May 30, 2023                              Respectfully submitted,

                                                STINSON LLP


                                                By:  /s David R. Barnard _____

                                                    David R. Barnard, #47127MO
                                                    1201 Walnut Street, Suite 2900
                                                    Kansas City, MO 64106-2150
                                                    Telephone: (816) 691-2608
                                                    Telefax: (816) 412-1017
                                                    Email:   david.barnard@stinson.com

                                                    Judith Araujo, #54102CO
                                                    1144 Fifteenth Street, Suite 2400
                                                    Denver, CO 80202
                                                    Telephone: (303) 376-8400
                                                    Telefax: (303) 376-8428
                                                    Email:   judith.araujo@stinson.com


                                                    Adrianna Chavez, #035011AZ
                                                    1850 N. Central Ave., Suite 2100
                                                    Phoenix, AZ 85004
                                                    Telephone: (602) 212-8589
                                                    Telefax: (602) 586-5213
                                                    Email:   adrianna.chavez@stinson.com


                                                **ATTORNEYS FOR PLAINTIFF**
                                                **AOB PRODUCTS COMPANY**

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By:    /s/ David R. Barnard
Attorney for Plaintiff

CORE/3510895.0750/177656375.3